

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Hon. Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. 0-5995
Re: When does the motor fuel
tax attach upon motor fuel
sold through Army Post Ex
changes and Navy Ship's
Service Stores?

You request the opinion of this department, which
for the sake of brevity we summarize as follows:

"Is the motor fuel tax levied by virtue of
Chapter 184, Article IV, Regular Session, 47th
Legislature, applicable upon the sale of motor
fuel made to Post Exchanges and Naval Stores
or upon the subsequent sale of the motor fuel
made by the exchanges and naval stores, in
view of what is commonly known as the Buck
amendment to the Hayden-Cartwright Federal Aid
Act?"

We shall set out below such portions of our Motor
Fuel Tax Act and of the Hayden-Cartwright Federal Aid Act
as we deem helpful in answering your questions. These Acts
read as follows:

"Texas Motor Fuel Taxing Act:

"(a) There shall be and is hereby levied and
imposed (except as hereinafter provided) upon
the first sale, distribution, or use of motor
fuel in this State an occupational or excise
tax of Four (4) cents per gallon or fractional
part thereof so sold, distributed, or used in
this State. Every distributor who makes a
first sale or distribution of motor fuel in

0 COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

this State for any purpose whatsoever shall,
at the time of such sale or distribution, col-
lect the said tax from the purchaser or recip-
ient of said motor fuel, in addition to his
selling price, and shall report and pay to the
State of Texas the tax so collected at the
time and in the manner hereinafter provided.
Every such distributor shall also be liable to
the State of Texas for the said tax of Four
(4) cents per gallon on each gallon of motor
fuel or fractional part thereof used or con-
sumed by him and shall report and pay said tax
as hereinafter provided."

"Buck Amendment to the Hayden-Cartwright Federal
Aid Act:

"Section 10. (a) That all taxes levied by
any State, Territory or the District of Columbia
with respect to or measured by, sale, purchases,
storage or use of gasoline or other motor vehicle
fuels may be levied, in the same manner and to the
same extent, with respect to such fuels when sold
by or through post exchanges, ship stores, ship
service stores, commissaries, filling stations,
licensed traders, and other similar agencies, located
on United States Military or other reservations, when
such fuels are not for the exclusive use of the
United States. Such taxes, so levied, shall be paid
to the proper taxing authorities of the State, Terri-
tory or the District of Columbia, within whose borders
the reservations affected may be located. (Emphasis
ours)

"(b) The officer in charge of such reservation
shall, on or before the fifteenth day of each month,
submit a written statement to the proper taxing au-
thorities of the State, Territory or the District of
Columbia within whose boarders the reservation is
located, showing the amount of such motor fuel with
respect to which taxes are payable under sub-section
(a) for the preceding month."

We deem it important to keep in mind the purpose
and function of these two statutes. Our State statute is a
taxing act by virtue of which the Legislature within its
constitutional powers has levied an excise tax upon the first

Hon. Geo. H. Sheppard, Page 3

sale, the first distribution, or the first use in this State, which is designated as an occupation or excise tax. The Hayden-Cartwright Federal Aid Act is a permissive or congressional grant of power to the State to levy the tax upon certain agencies or instrumentalities under Federal jurisdiction located on United States military or naval reservations, which otherwise might be exempt under the Federal Constitution.

The obvious intent of our statute is to levy the tax against the user or consumer of motor fuel, but the distributor is constituted the collecting agency of the State for the collection of the tax. It is clear that the tax is imposed upon only one sale or distribution and not upon successive or subsequent sales or distributions. This is clear from the following part of the statute:

"In each subsequent sale or distribution of motor fuel upon which the tax of Four (4) cents per gallon has been collected, the said tax shall be added to the selling price, so that such tax is paid ultimately by the person using or consuming said motor fuel for the purpose of generating power for the propulsion of any motor vehicle upon the public highways of this State."

We deem it helpful as we proceed to note certain definitions contained in Article 7065b-1, just as the court did in the consideration of the case of State v. City of El Paso (Supreme Court), 143 S. W. (2d) 366, in construing our motor fuel tax statute as it then existed and before it was amended. Much said in this case is not inappropriate in considering our present statute. The court deemed it helpful to note the definitions contained in the act, especially the definition of the tax, which was the same as contained in the present act, and is as follows:

"An occupation or excise tax of 4¢ per gallon of motor fuel or fractional part thereof."

The tax, by the express language of the statute, is upon the first sale, first distribution, or first use of motor fuel in this State. Our present statute defines a first sale thus:

"First sale) shall mean the first sale or distribution in this State of motor fuel refined, blended, imported into, or in any other manner, produced in, acquired or brought into this State."

Hon. Geo. H. Sheppard, Page 4

Who under the statute initiates a first sale, a distribution or use of motor fuel upon which the tax is levied? The statute answers: (a) "distributor". Who is a "distributor"? Again the statute answers as follows:

"Distributor shall mean and include every person in this State who refines, distills, manufactures, produces, blends, or compounds motor fuel or blended materials, or in any other manner acquires or possesses motor fuel or blended material for the purpose of making a first sale, use, or distribution of the same in this State; and it shall also include every person in this State who ships, transports, or imports any motor fuel or blended material into this State and makes the first sale, use, or distribution of same in this State; the said term shall also include every person in this State who produces or collects the liquid residuent of natural gas, commonly known as drip gasoline, or who is responsible for the production or formation of said drip gasoline, intentionally or otherwise, unless said product is totally destroyed or rendered neutral as motor fuel or as a product capable of use as motor fuel in this State." (Emphasis Ours)

In order that there be no loophole for escape in those instances where the tax falls upon the first use or distribution of motor fuel as distinguished from a first sale, we again look to certain definitions contained in the act. These are as follows:

The term "user" shall be construed to mean any person who uses or consumes "liquefied gases" and "other liquid fuels" within this State in internal combustion engines for the generation of power to propel motor vehicles upon the public highways of this State.

"'Distribution' shall mean and include any transactions, other than a sale, in which ownership or title to motor fuel, or any derivative of crude oil or natural gas, passes from one person to another."

"'Person' shall mean and include every individual, firm, association, joint stock company, syndicate, copartnership, corporation (public, private or municipal), trustee, agency or receiver." (Emphasis Ours)

Hon. Geo. R. Sheppard, Page 5

"Dealer" shall mean and include every person other-than a distributor who engages in the business in this State of distributing or selling motor fuel within this State."

To make sure that certain terms used in this act be uniformly understood and uniformly applied, the Legislature elected to define them, and to these defini- tions we must adhere.

Summarizing further, what we have endeavored to say is expressed by Justice Critz in the case of State v. City of El Paso, supra, as follows:

"From the several statutory provisions it is evident that the Legislative intent, as expressed in the above statutes, is to impose a motor fuel tax of four cents per gallon on the first sale of motor fuel, where such fuel is actually sold in Texas. It is further evident that the Legislature intended to impose a four cents per gallon user tax on all motor fuel used on the public highways of this State in instances where the user obtains such motor fuel under such circumstances that no actual sale thereof transpires in Texas. Simply stated, when our motor fuel tax laws are read and construed as a whole, it is evident that the tax levied for use of motor fuel in this State and the tax levied for sale of motor fuel are the same. Under the express words of the statute, use of motor fuel without actual sale in this State is still a statutory sale; that is to say, 'first use' is the 'first sale' for taxation purposes where there is no actual first sale." (Emphasis ours)

Amplifying further, a "distributor" or "dealer" may be not only a collecting agency in behalf of the State for the collection of a tax upon the motor fuel distributed or sold by it, but a user of motor fuel upon its own account; in both instances, liable to account for and pay the tax as provided in the statute to the Comptroller of Public Accounts.

We do not construe the case of Standard Oil Company of California v. Johnson (United States Supreme Court), 86 L. Ed. 1611, as holding that in no event may the State levy an excise tax on the sale, distribution, or use of motor fuel, but left the question open if it should come to the court upon a correct determination by the Supreme Court of California of the status of Post Exchanges and Naval Stores as Federal instru- mentalities. Moreover, it does not appear in this case what

Hon. Geo H. Sheppard, Page 6

recognition, if any, was accorded by the Court to the Hayden-Cartwright Federal Aid Act in reaching its decision.

We, therefore, feel justified by the express provisions of our motor fuel tax law and the Hayden-Cartwright Federal Aid Act, and the authority of State v. City of El Paso, supra, in holding that the delivery in Texas to a post exchange or naval store by a "distributor" constitutes a first sale upon which the distributor should collect and remit the motor fuell tax, except upon such motor fuel as used exclusively by the United States Government. As we have noted, however, the statute provides that in each subsequent sale or distribution of motor fuel upon which the tax of 4¢ per gallon has been collected, the said tax shall be added to the selling price, so that such tax is paid ultimately by the person using or consuming said tax for fuel for the propulsion of any motor vehicle upon the public highways of this State. In other words, a post exchange or naval store that had paid the tax to the distributor and subsequently sells to the user, other than to the United States Government, is authorized under the law to reimburse itself by collecting the tax from the ultimate user.

We trust we have made plain our views.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By:

L. P. Lollar
Assistant

APPROVED JUN 2, 1944

ATTORNEY GENERAL OF TEXAS

LPL:RT


APPROVED OPINION COMMITTEE BY BWB CHAIRMAN